PRICE, Judge.
Bossier Millwork & Supply Company sued David L. McMahone and Samuel Touchstone for the sum of $3,812.34, representing the balance owed for building materials furnished in the construction of two houses on property belonging to Mc-Mahone near Red Chute in Bossier Parish. Plaintiff also asked for recognition of a materialmen’s lien against the property belonging to McMahone.
After suit was filed McMahone filed a petition in bankruptcy and the court granted a motion to stay the proceedings as against this defendant.
The suit was tried as against the defendant, Touchstone, and after the district court rejected plaintiff’s demands a devolu-tive appeal was perfected.
Appellant sought to hold Touchstone liable for the materials furnished to Mc-Mahone by attempting to prove that Touchstone had authorized the materials to be bought in his name and charged to his account with plaintiff.
We shall attempt to give a resume of the conflicting testimony presented on trial of this case. Sometime in November of 1968, McMahone submitted a list of materials he needed for construction of two residences to a salesman for plaintiff. He was accompanied by Touchstone, who had another matter to discuss with plaintiff’s bookkeeper. Plaintiff contends that after the material prices were figured by the salesman, McMahone was told credit could not be extended to him because of his bad credit rating. Plaintiff further contends McMahone stated Touchstone would allow the materials to be charged to him. There is no contention that the matter was discussed with Touchstone in person on this date while he was in the business establishment. The manager of the plaintiff firm testified he talked on the phone to Touch-' stone on the following day, and at that time Touchstone authorized the materials to be charged to his account. In addition the salesman who received the list of materials from McMahone testified he visited the job site on the following date and the matter was discussed with Touchstone. He contends Touchstone asked if it could not be charged to the name of McMahone, and on being told it could not, he said it would be all right to leave it as it was.
The first invoices of material delivered on November 21, 1968, designated the material as being sold to Sam Touchstone. These were signed by Kenneth Byrd, acknowledging receipt of the material. Byrd was the sub-contractor furnishing all labor for the construction under contract with McMahone. Subsequent invoices were originally made out to Touchstone, but were changed by the addition of the name of McMahone as a purchaser.
Testimony of Touchstone, McMahone and Byrd attempted to show the only relationship Touchstone had with this construction was in performance of some common labor for Byrd, who, in return, was to help him with certain carpenter work on his own home. Byrd testified he advised Touchstone that the first series of invoices were billed to him, and that Touchstone became enraged and told him to put Mc-Mahone’s name on any further invoices he signed.
*119 Touchstone denied having the telephone conversations with the plaintiffs manager in which he was accused of having authorized the charges. He admitted talking with the salesman on the following date, but denied any discussion of the materials being charged to him.
Plaintiff attempted to prove that prior to the purchase of the materials involved in this suit, Touchstone had helped Mc-Mahone obtain credit by use of his name for a fee or charge. Plaintiff introduced evidence showing that Touchstone had previously had several business relationships with McMahone in which he made loans to McMahone to enable him to carry on a furniture auction business. Also a loan of $2,200.00 was made by McMahone with Touchstone as an accommodation endorser to enable McMahone to complete the sale of a house in Coushatta, Louisiana.
The trial judge, after hearing this conflicting evidence, did not find that it was sufficient to sustain plaintiff’s contention that Touchstone authorized the purchase of this material in his name, and rejected plaintiff’s demands.
The only assignment of error by appellant is that the trial judge erred as a matter of law in holding that plaintiff had not borne its burden of proof in proving the agreement -of Touchstone permitting the materials to be charged to him.
Appellant contends that the evidence presented by it renders it much more logical and probable that Touchstone gave his permission for the sales to be made to him. For example, it is argued that the billing on the first invoices was solely in the name of Touchstone, indicating the probability that permission had been granted by him. Secondly, the proven business relationship between Touchstone and McMahone prior to these transactions suggest that appellant’s contentions are correct. Thirdly, the knowledge by appellant that McMahone was named as a bad credit risk on a list supplied by a wholesale credit association makes it improbable that appellant would have extended credit to McMahone.
While these arguments are very persuasive, we cannot say that they are sufficient to preclude a trial court from believing the testimony of the defendant, Touchstone, and his witnesses.
Logic and probabilities are only factors which a trial court may draw upon in evaluating conflicting testimony. They may create a preponderance of the evidence in favor of one party by establishing more credibility in certain witnesses. It is elementary, however, that in cases to be decided solely on the credibility of witnesses, the trial judge’s conclusions are to be given great weight, and in the absence of patent error, appellate courts should not disturb these findings. This case must fall in this category.
On the basis of the conflicting evidence contained in the record before us, we cannot say that the trial judge committed manifest error in his conclusion.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s cost.